1  Rosemary M. Rivas (State Bar No. 209147)
2  rrivas@finkelsteinthompson.com
   Mark Punzalan (State Bar No. 247599)
3  mpunzalan@finkelsteinthompson.com
4  **FINKELSTEIN THOMPSON LLP**
   100 Bush Street, Suite 1450
5  San Francisco, California 94104
6  Telephone: (415) 398-8700
7  Facsimile: (415) 398-8704

8  *Counsel for Plaintiff Mary Shanahan*

9

10             **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12

13  MARY SHANAHAN, on behalf of herself        Case No **CV10 6911 RGKFMOx**
    and all others similarly situated,
14
                                               **CLASS ACTION COMPLAINT**
15              Plaintiff,
                                               **JURY TRIAL DEMANDED**
16       v.

17
    COGENT INC.; MING HSIEH; JOHN C.
18  BOLGER; JOHN P. STENBIT; and
19  KENNETH R. THORNTON

20              Defendants.

21

22

23

24

25

26

27

28

─────────────────────────────────────────
                 CLASS ACTION COMPLAINT

Plaintiff Mary Shanahan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to the allegations which pertain to Plaintiff, which allegations are based upon personal knowledge, as follows:

## NATURE OF THE ACTION

1. This is a shareholder class action on behalf of Plaintiff and the public stockholders of Cogent, Inc. ("Cogent" or the "Company") seeking injunctive and other appropriate relief for breaches of fiduciary duty by Defendants Cogent, and its Board of Directors (the "Cogent Board" or the "Board"), in their attempt to sell the Company to 3M through an insufficient process and for an inadequate price.

2. Under the terms of the proposed transaction, Cogent shareholders will receive the inadequate consideration of $10.50 per share in a transaction totaling approximately $943 million, or approximately $430 million net of cash acquired (the "Proposed Transaction").

3. The Proposed Transaction is an opportunity for Cogent's President, CEO and Chairman Ming Hsieh to cash in on his significant holdings in the Company. Through various entities, Mr. Hsieh controls nearly 39% of the outstanding shares of the Company. As Chairman, President/CEO and controlling shareholder, Defendant Hsieh effectively controls every aspect of the Company, and has engineered a transaction that will substantially enrich him, the entities he controls and the other officers and directors of the Company. Additionally, the Proposed Transaction also provides Mr. Hsieh and the majority of the remaining officers with employment in the newly formed entity following the Proposed Transaction, putting him at odds with the common shareholders.

4. Moreover, the process undertaken by the Board was woefully insufficient in the months immediately preceding the announcement of the Proposed Transaction. In approving the Proposed Transaction, Cogent spurned an offer from a competing bidder worth between $11.00 to $12.00 per share. Despite

such interest, the Board decided to enter into the Proposed Transaction for only $10.50 per share, a price that the Board had deemed insufficient on prior occasions. Such a blatant missed opportunity for increased consideration demonstrates the Board's failure to take all reasonable steps to maximize shareholder value.

5.     Additionally, the Proposed Transaction appears to reflect the Board's conflicts of interest by favoring the interests of the Board over those of the shareholders, undervaluing the Company and by including preclusive deal protection provisions that serve no purpose other than to insulate the deal from potential competing bids. As such, Cogent's shareholders will be permanently and incurably harmed if the Proposed Transaction is allowed to be consummated.

6.     These breaches of fiduciary duty are further aggravated by Defendants' non-disclosure of numerous material facts concerning the Proposed Transaction in the recommendation statement on Schedule 14D-9 (the "14D-9") with the Securities and Exchange Commission on September 10, 2010. Defendants had full and unfettered access to all material facts concerning the Proposed Transaction, and were actively aware of each and every fact omitted therein. Unless these material non-disclosures are corrected, Cogent shareholders will be entirely unable to cast a fully and fairly informed vote on the Proposed Transaction, and will be permanently and irreversibly harmed as a consequence.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Section 14(e) of the Exchange Act, 15 U.S.C. §§78n(e), as well as SEC Rule 14D-9, 17 C.F.R. § 240.14d-101. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. 78aa and 28 U.S.C. §§ 1331. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

1   This Court also has jurisdiction over this action pursuant to 15 U.S.C.

2   §78bb(f)(3)(A)(i), because it is a class action based upon the statutory or common

3   law of Delaware, Cogent's state of incorporation, and thus may be maintained in

4   federal court.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367.

5       8.    Venus is proper in this District pursuant to 28 U.S.C. § 1391 because

6   defendant Cogent has its principal place of business in this District.  Plaintiff's

7   claims arose in this District, where most of the actionable conduct took place,

8   where most of the documents are electronically stored and where the evidence

9   exists, and where virtually all the witnesses are located and available to testify at

10   the jury trial permitted on these claims in this Court.  Moreover, each of the

11   Individual Defendants, as Company officers and/or directors, has extensive

12   contacts with this District.

13   **PARTIES**

14       9.    Plaintiff Mary Shanahan owns shares of Cogent common stock and

15   has owned such shares at all relevant times, as reflected in the certification filed

16   herewith.  Plaintiff is a resident of the state of Wisconsin.

17       10.    Cogent is a Delaware corporation that is headquartered at 639 North

18   Rosemead Blvd., Pasadena, California.  Cogent is a provider of automated

19   fingerprint identification systems (AFIS) and other fingerprint biometrics solutions

20   to governments, law enforcement agencies and other organizations worldwide.

21   Cogent designs and develops an integrated AFIS solution consisting of its

22   fingerprint biometric software, together with optimized hardware and professional

23   services. Cogent is named as a necessary party.

24       11.    Defendant Ming Hsieh ("Defendant Hsieh") has served as the

25   Company's Chief Executive Officer, President and Chairman of the Board of

26   Directors since 1990 and at all relevant times.  Upon information and belief,

27   Defendant Hsieh is a resident of the State of California.

28       12.    Defendant John C. Bolger has served as a Director for the Company

1 | since March 2004 and at all relevant times. Upon information and belief,
2 | Defendant Bolger is a resident of the State of California.

3 |     13.    Defendant John P. Stenbit has served as a Director for the Company
4 | since April 2004 and at all relevant times. Upon information and belief, Defendant
5 | Stenbit is a resident of the Commonwealth of Virginia.

6 |     14.    Defendant Kenneth R. Thornton has served as a Director for the
7 | Company since June 2004 and at all relevant times. Upon information and belief,
8 | Defendant Thornton is a resident of the State of Maryland.

9 |     15.    The defendants named above in paragraphs 11-14 are collectively
10 | referred to herein as the "Individual Defendants." The Individual Defendants, as
11 | officers or directors of Cogent, or both, have a fiduciary relationship with Plaintiff
12 | and other public shareholders of Cogent, and owe them the highest obligations of
13 | good faith, fair dealing, loyalty, and due care.

## CLASS ACTION ALLEGATIONS

16. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all other shareholders of the Company (except defendants and any person, firm, trust, corporation, or other entity related to or affiliated with defendants), who are or will be threatened with injury arising from defendants' actions, as more fully described herein (the "Class").

17. This action is properly maintainable as a class action.

18. The Class is so numerous that joinder of all members is impracticable. According to the Company's SEC filings, as of August 5, 2010, Cogent had 88,840,932 outstanding.

19. There are questions of law and fact which are common to the Class including, *inter alia*, the following:

    a.    Have the Individual Defendants breached their fiduciary duties to Plaintiff and the other members of the Class;

    b.    Are the Individual Defendants, in connection with the Proposed

Transaction, pursuing a course of conduct that does not maximize the Company's value in violation of their fiduciary duties;

c.   Have Defendants disclosed all material information in connection with the tender offer; and

d.   Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct?

20.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

21.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

22.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

23.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

24.   By reason of the Individual Defendants' positions with the Company as officers or Directors, or both, they are in a fiduciary relationship with Plaintiff and the other public shareholders of the Company and owe them, as well as the Company, a duty of highest good faith, fair dealing, loyalty, and full, candid, and adequate disclosure, as well as a duty to maximize shareholder value. They are required to exercise good faith and subordinate their own personal interests to those of the public stockholders where their interests conflict. Additionally, because the Proposed Transaction is an all cash deal, it necessarily involves a

CLASS ACTION COMPLAINT

change of control. As such, Defendants owe the Company's shareholders a duty to maximize shareholder value in connection with the sale of the corporation.

25.    As alleged in detail below, the Individual Defendants have breached their fiduciary duties to the Company's public shareholders by agreeing to the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

26.    Cogent is a Delaware corporation that is headquartered at 639 North Rosemead Blvd., Pasadena, California.  Cogent is a provider of automated fingerprint identification systems (AFIS) and other fingerprint biometrics solutions to governments, law enforcement agencies and other organizations worldwide. Cogent designs and develops an integrated AFIS solution consisting of its fingerprint biometric software, together with optimized hardware and professional services. Cogent is named as a necessary party.

27.    The Company has performed remarkably well amidst the recent global recession. As recently as August 5, 2010, the Company touted its excellent performance and growth potential in a press release announcing its financial results for the second quarter ended June 30, 2010.  In this press release, the Company announced second quarter 2010 revenues of $25.4 million and net income (non-GAAP) for the second quarter of 2010 was $3.4 million.  As Defendant Hsieh announced:

> Our order flow in the first half of the year has been very strong to date, and we expect to start seeing the benefit of these orders in the second half of the year and 2011...These orders, combined with our year-end backlog of over $200.0 million, give us good visibility and confidence that we are well positioned to achieve our financial targets for 2010 with a strong second half of the year. While gross margins were impacted by product mix in our initial roll-out for the U.K. Post Office, we expect them to rebound and accelerate starting in the third

quarter. During our second quarter we repurchased approximately $6.7 million of our stock, as we remain confident in our business and our ability to capitalize on both the near and longer term opportunities in biometrics.

28.     Cogent also stands poised to continue its significant growth from sales of the Company's AFIS services, which typically consist of Programmable Matching Accelerator ("PMA") servers and other AFIS equipment, including workstations and live-scans, bundled with proprietary software. The Company markets its services primarily to U.S. and foreign government agencies and law enforcement agencies, particularly to the Department of Homeland Security ("DHS"), where the Company derives the most significant portion of its revenue. The DHS uses Cogent's services in connection with the implementation of the United States Visitor and Immigrant Status Indicator Technology, or US-VISIT, program, and the Company has stated that it anticipates the DHS will account for a significant portion of its revenues for the foreseeable future.

29.     The Company has also experienced continued demand from other governments as they deploy AFIS solutions at points of entry and exit, including borders, seaports and airports, and in connection with national identification programs. In fact, Cogent was recently awarded a contract with the U.K. National Mobile Identification Project to provide a full AFIS, an online ordering system and biometric capture devices to suit a broad range of policing needs in the U.K. Cogent also recently won a contract to provide an AFIS for the New York State Office of Temporary and Disability Assistance.

30.     Thus, in light of the Company's future prospects and expectations outlined herein, the Directors have no valid or pressing reason to sell the Company at the low value contemplated in the Proposed Transaction (as explained below).

## Defendants Have Failed to Maximize Shareholder Value

31.     On August 30, 2010, the Company issued a press release announcing

1   that Cogent had unanimously approved an agreement under which 3M would
2   acquire the Company for approximately $10.50 per share in a transaction totaling
3   approximately $943 million, or approximately $430 million net of cash acquired.
4   This press release stated that a subsidiary of 3M would commence a tender offer to
5   purchase all outstanding shares of Cogent within ten business days of the press
6   release.  The press release also stated that Defendant Hsieh and "certain entities
7   affiliated with him" agreed to tender their shares in the offer and that the Proposed
8   Transaction was expected to close during the fourth quarter of the year.

9       32.   The offer price of $10.50, however, provides inadequate consideration
10  to Cogent shareholders.  As reported through Yahoo! Finance, at the time the
11  Proposed Transaction was first announced, the median target price of the stock
12  from the reports of analysts covering Cogent stock was $13.50 a share.  Thus, the
13  price offered in the Proposed Transaction offers no premium to Cogent
14  shareholders but instead provides more than a 22% discount to the median target
15  price of numerous analysts.

16      33.   Moreover, at least one analyst quoted by Yahoo! Finance set a high
17  target price of $16.00 a share.  These target prices, which are significantly higher
18  than the consideration offered in the Proposed Transaction, clearly reflect the
19  ongoing improvements in the Company's operations and financial results,
20  particularly due to the potential of growth in the Company's products and  business
21  prospects (as discussed above).  These target prices also provide objective
22  confirmation that the consideration offered to Cogent shareholders in connection
23  with the Proposed Transaction is insufficient.

24      34.   Further, Wall Street analysts have viewed the Proposed Transaction as
25  a "steal" for 3M.  As noted in a Los Angeles Times article entitled "3M gets 'a
26  steal' in Cogent buyout, and some investors wonder why,"[1] the Proposed

---

[1] http://latimesblogs.latimes.com/money_co/2010/08/cogent-3m-ming-hsieh-pasadena-takeover-

CLASS ACTION COMPLAINT

Transaction has sparked a negative reaction from Cogent investors and analysts who believe that Cogent is "selling the business too cheap." According to the article, Brian Ruttenbur ("Ruttenbur"), an analyst following Cogent at brokerage Morgan Keegan & Co., also stated that 3M "got a steal at this price," particularly since 3M is paying only $430 million for a business "sitting with $513 million in cash on its balance sheet." The article also noted that Cogent "operates in an industry that is expected to post robust growth over the long run as national governments, local law enforcement agencies and companies focus on enhancing security," particularly from the DHS. Similarly, Benchmark Co LLC analyst Josephine Millward also said the deal values Cogent at about 6.6 times estimated 2011 earnings before special items, whereas other deals in the homeland security and defense sectors· have produced multiples of at least 8. Lazard Capital Markets analyst Joel Fishbein also stated that the Proposed Transaction undervalues Cogent, given its "significant cash flow, defensible market opportunity, growing backlog" and strong balance sheet.

35.   Some of Cogent's largest shareholders have also publicly announced their opposition to the consideration offered in the deal. According to a recent Los Angeles Times article entitled "Big shareholder of Cogent opposes buyout terms,"[2] Cogent's third-largest shareholder, Pointer Capital, publicly announced that it would "vigorously oppose" the Proposed Transaction because the "bid price significantly undervalues the business." According to the article, Pointer Capital wrote a letter to the Board that stated its belief that Cogent was worth at least $15 a share, particularly in light of "Cogent management's recent upbeat views of the

---

biometrics-homeland-security.html

[2] http://latimesblogs.latimes.com/money_co/2010/08/cogent-3m-takeover-offer-pointer-capital-atlantic-investments.html?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+LaLand+%28L.A.+Land%29

company's long-term prospects, and the cash flow Cogent is expected to generate just over the next 18 months."

36.     Based on the foregoing, it is apparent that Defendants have failed to fulfill their obligation to demonstrate that they have taken all reasonable steps to maximize shareholder value. Moreover, Cogent has continued to perform well compared to its competitors in its industry and the overall market in light of the fact that equities valuations continue to be temporarily depressed due to global economic conditions. Clearly, Cogent's value as an ongoing business is greater than the consideration to be paid in the Proposed Transaction. As such, the Proposed Transaction is inadequate to Cogent's shareholders and represents a significant discount to the Company's actual value in the marketplace.

## Defendants Have Agreed to Preclusive Deal Protection Devices

37.     As part of the Merger Agreement, the Individual Defendants also agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company. These provisions will eliminate or hinder the possibility of the proper maximization of Cogent's shareholder value.

38.     The Merger Agreement contains a strict "no shop" provision (Section 6.8) prohibiting the members of the Cogent Board from taking any affirmative action to comply with their fiduciary duties to maximize shareholder value, with limited exceptions.

39.     The Defendants have also given 3M an irrevocable option to purchase newly issued shares from Cogent in an amount necessary to acquire one share more than the 90% required for a short form merger. Section 1.8 of the Merger Agreement refers to this irrevocable option as the "Top-Up Option." This Top-Up Option *guarantees* the expeditious sale of Cogent to 3M without requiring a shareholder vote. It also raises the specter of the possibility that Cogent will be compelled to issue tens of millions of dollars worth of Cogent stock to 3M in

effectuating the transaction, thereby potentially substantially diluting non-tendering shareholders' interests and potentially dramatically prejudicing and devaluing the shareholders' appraisal rights.

40.    In addition to the "no shop" provision and "Top-Up Option", the Merger Agreement includes a $28,300,000 termination fee should the Board choose to accept a superior deal.  The termination fee in combination with the other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

41.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

### The Board Has Conflicts of Interest With the Cogent Shareholders

42.    A majority of the Individual Defendants has clear and material conflicts of interest and is acting to better their own interests and the interests of Defendant Hsieh and Cogent's other senior managers at the expense of the Company's public shareholders.

43.    The Individual Defendants also have conflicts of interest that put them at odds with the public shareholders.  Indeed, the Los Angeles Times quoted analyst Ruttenbur as saying that Hsieh simply "got tired of being a public-company CEO" and going public allowed Hsieh to cash out of huge portion of his holdings in Cogent—which Ruttenbur estimates to be at least $350 million since 2004. Hsieh himself still directly owns nearly 39% of Cogent, or 34.4 million shares worth $361 million if the 3M deal goes through."  The article also stated Ruttenbur's belief that Hsieh owns additional stock via trust accounts.

44.    Additionally, other Directors and executives will receive financial benefits from the Proposed Transaction that are not shared with Cogent's public shareholders.  On August 29, 2010, Defendant Hsieh, Paul Kim (Cogent's Chief Financial Officer), James Jasinski (Cogent's Executive Vice President) and

Michael Hollowich (another Executive Vice President of Cogent) entered into retention agreements with 3M to continue their employment with Cogent if the Proposed Transaction is consummated. Under Defendant Hsieh's retention agreement, he will receive a retention bonus of $153,000, payable in two installments such that one-third of this amount is payable on the first anniversary of the Commencement Date (as defined in the Merger Agreement) and the remaining amount is payable on the second anniversary of the Commencement Date as long as he remains employed with the Company. If Defendant Hsieh's employment with the Company ends before the end of the Transition Period (as defined in the Merger Agreement) due to his termination without cause or his death or disability, he is entitled to receive the remaining unpaid portion of the retention bonus. Kim, Jasinski, and Hollowich have similar retention agreements with their retention bonus payments equal to $153,000 for Kim, between $36,000 and $126,000 for Jasinski, and between $36,000 and $126,000 for Hollowich.

45. Further, under the Proposed Transaction, each outstanding and unexercised option will be accelerated and will be converted into cash corresponding to the consideration offered in the Proposed Transaction. This will greatly accelerate the Defendants' opportunity to monetize their stake in Cogent, creating a conflict that prevents them from adequately representing the public shareholders. The Individual Defendants are all set to receive large sums of money in exchange for tendering shares received through exercising options and the vesting of restricted stock units.

46. The Merger Agreement also provides that any outstanding option to acquire shares, whether vested or unvested, shall vest and become fully exercisable immediately so that the shares may be tendered in the Proposed Transaction. Defendant Bolger will receive $4,700 from vested stock options; Defendant Stenbit will receive $244,700 from vested stock options; Defendant Thorton will receive $244,700 from vested stock options.

47.   The Merger Agreement also provides that outstanding restricted stock units ("RSUs") will fully vest and convert into the right to receive the merger consideration.  Defendant Hsieh will receive $945,000 from his RSUs; Defendant Bolger will receive $84,000 from his RSUs; Defendant Stenbit will receive $84,000 from his RSUs; Defendant Thorton will receive $84,000 from his RSUs.

48.   Additionally, under the terms of the Merger Agreement, Defendant Hsieh and certain entities he controls are slated to receive a windfall of approximately $360,884,633 in the Proposed Transaction.[3]  Defendant Hsieh and these entities hold approximately 34,369,965 shares of Cogent stock, representing approximately 38.9% of Cogent's outstanding shares.  On August 29, 2010, Defendant Hsieh and these entities entered into a Voting and Tender Agreement whereby they agreed to tender their shares in the Proposed Transaction.  Thus, 38.9% of total Cogent shares outstanding will be tendered.

## Defendants Failed to Engage in a Process Sufficient to Maximize Shareholder Value

49.   Cogent has been the target of several potential buyers over the past two years.  Since Cogent came into contact with 3M regarding a possible transaction, it was in discussions with at least six other companies who expressed varying levels of interest in a possible transaction.  It is with regard to the Company's dealings with "Company D" (as defined in the 14D-9) that the Board breached its fiduciary duty to maximize shareholder value.

50.   The process undertaken by the Board was woefully insufficient in the months immediately preceding the announcement of the Proposed Transaction.  As explained in the background section of the 14D-9, Cogent received 3M's initial

---

[3] According to the Voting and Tender Agreement entered into on August 29, 2010, Defendant Hsieh owns 15,259,965 shares of Cogent stock personally, serves as a trustee for 10,139,128 shares held in the Ming Hsieh Revocable Family Trust dtd 11/01/2006, serves as a trustee for 5,250,000 shares held in the Ming Hsieh Revocable Family Trust dtd 11/02/2006, serves as a trustee for the 1,860,436 shares held in the Tiffany Hsieh Irrevocable Trust, and serves as a trustee for 1,860,436 shares held in the Pauline Hsieh Irrevocable Trust.

CLASS ACTION COMPLAINT

offer of $10.50 per share on July 2, 2010. Shortly thereafter, the Board met and advised 3M that the $10.50 per share price was not a sufficient price and would have to be improved.

51.     Meanwhile, Company D made a preliminary non-binding indication of interest in the range of $11.00 to $12.00 per share on August 17, 2010. After receipt of this offer, the Board met on August 18, 2010 and *again* instructed Credit Suisse to inform 3M of Company D's proposal and that the $10.50 offer was not acceptable to Cogent.

52.     Despite Cogent's position that 3M's price was insufficient, and its preliminary indication of interest from Company D that could potentially provide $1.50 more in consideration per share, the Board inexplicably decided to enter into merger negotiations with 3M on August 20, 2010 while negotiations with Company D were pending.

53.     Rather than encourage additional bids, this decision by the Cogent Board effectively locked in Cogent to the Proposed Transaction price – a price that the Cogent Board and its financial advisors just two days prior believed was "not acceptable." Further locking in Cogent to the 3M deal, between August 24 and August 29, 2010, the Company successfully negotiated retention and incentive arrangements with seven of eight senior Cogent employees. These negotiations were held while the Company was purportedly still interested in a deal with Company D. The Merger Agreement negotiations and retention and incentive arrangements, however, essentially foreclosed any chance of the Board backing out to accept a superior proposal from Company D, and rendered the Proposed Transaction with 3M a *fait accompli*.

**The Materially Misleading And/or Incomplete Disclosure Documents**

54.     Defendants are also breaching their fiduciary duty of candor to the public shareholders of Cogent by failing to disclose material information in the 14D-9. Defendants had full and unfettered access to all material facts concerning

the Proposed Transaction, and were actively aware of each and every fact omitted therein.

55.     The Individual Defendants acted with scienter in that they (a) had access to all documents and information concerning the Proposed Transaction; (b) directed and approved the filing of the 14D-9; (c) knew or with deliberate recklessness disregarded that the public documents and statements issued or disseminated in the name of the Company were materially incomplete or misleading; (d) knew or with deliberate recklessness disregarded that such statements of documents would be issued or disseminated to the investing public; and (e) knowingly or with deliberate recklessness participated or acquiesced in the issuance of dissemination of such statements or documents as primary violations of the federal securities laws.

56.     Most notably, the 14D-9 fails to disclose why the Cogent Board and its financial advisors decided to accept the $10.50 per share consideration in the Proposed Transaction, despite deciding on at least two occasions that the price was insufficient and would have to be improved.  The Board had decided as recently as August 18, 2010 that the $10.50 price was not acceptable, yet on August 29, 2010 – a mere week and a half later – decided that the price was acceptable and recommended the Proposed Transaction.  Such an about face is particularly galling in light of the existence of another bidder prepared to offer significantly more, and disclosure of why the Board recommended the Proposed Transaction is warranted.

57.     The Proxy also completely fails to disclose the underlying data concerning the methodologies, projections, key inputs and multiples relied upon and observed by Credit Suisse, the Company's financial advisor, so that shareholders can properly assess the credibility of the various analyses performed by Credit Suisse and relied upon by the Board in recommending the Acquisition. With regard to Credit Suisse, the Proxy is deficient and should provide, *inter alia*, the following:

a. The criteria, supporting data, summary schedules and analysis utilized by Credit Suisse to select the companies that were deemed similar to Cogent and used in the *Selected Public Traded Companies Analysis*.

b. The criteria, supporting data, summary schedules and analysis utilized by Credit Suisse in the EBITDA and enterprise value analysis mentioned in the *Selected Public Traded Companies Analysis*.

c. The criteria, supporting data, premiums paid, summary schedules and analysis utilized by Credit Suisse to select the transactions that were deemed similar to the acquisition of Cogent and used in the *Selected Transactions Analysis*.

d. The underlying data, supporting schedules and calculations for the LTM EBITDA calculations and how they arrived at the implied per share calculations for the target companies in the *Selected Transactions Analysis*.

e. The underlying data and calculation of "unlevered after-tax free cash flows" used in the *Discounted Cash Flow Analysis*.

f. The "free cash flows" and the supporting data that the Company is expected to generate in the financial forecasts during fiscal years 2010 through 2013.

g. The underlying criteria, supporting data and analysis used to select discount rates ranging from 11.0% to 15% used in the *Discounted Cash Flow Analysis*.

h. The underlying criteria, supporting data and analysis used to compute the Implied Per Share Equity Reference Range for the Company in the *Discounted Cash Flow Analysis*.

CLASS ACTION COMPLAINT

i.     The underlying data and calculation of the net earnings and the adjustments necessary to compute the unlevered after-tax free cash flows.

58.   The 14D-9 fails to disclose material information concerning Credit Suisse.  In particular, the 14D-9 fails to disclose the specific services provided by Credit Suisse to Cogent in the past as well as the fees received for such services.  It is material for shareholders to be informed of any financial and economic interests of Credit Suisse may have in the Proposed Transaction or in the parties involved.

## COUNT I

### Breach of Fiduciary Duty – Failure to Maximize Shareholder Value
### (Against All Individual Defendants)

59.   Plaintiff repeats and realleges each allegation set forth herein.

60.   As Directors of the Company, the Individual Defendants stand in a fiduciary relationship to Plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty and care.  The Individual Defendants' agreement to  the Proposed Transaction will result in change of control of the Company which imposes fiduciary responsibilities to maximize the Company's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

61.   As discussed herein, the Individual Defendants have breached their fiduciary duties to the Company's shareholders by failing to engage in an adequate sale process, by agreeing to a transaction that undervalues the Company, and by agreeing to preclusive deal protection provisions that will greatly reduce the possibility of the emergence of a superior offer.

62.   As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of the Company's assets and will be prevented from benefiting from a value-maximizing transaction.

63.    Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

64.    Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Claim for Violations of Section 14(e) of the Exchange Act
### (Against Cogent and the Individual Defendants)

65.    Plaintiff repeats and realleges each allegation set forth herein.

66.    Cogent and the Individual Defendants have causes the 14D-9 to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

67.    Section 14(e) of the Exchange Act requires full and complete disclosure in connection with tender offers.

68.    The 14D-9 violates Section 14(e) because it omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Cogent and the Individual Defendants had full and unfettered access to all material facts in connection with the Proposed Transaction, and had active knowledge that the14D-9 is materially misleading and omits material facts that are necessary to render them non-misleading.

69.    The misrepresentations and omissions in the 14D-9 are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Proposed Transaction.

## COUNT II
### Breach of Fiduciary Duty of Candor
### (Against All Individual Defendants)

70.    Plaintiff, on behalf of himself and the other members of the Class, reallege and incorporate by reference each and every allegation set forth in the

preceding paragraphs as though alleged in full herein.

71.    The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the impending voting decision confronting Cogent's shareholders.

72.    As set forth above, the Individual Defendants have breached their fiduciary duties through materially inadequate disclosures and material disclosure omissions.

73.    As a result, Plaintiff and the Class members are being harmed irreparably.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment individually and on behalf of the Class, as follows:

A.    Declaring that this action is properly maintainable as a class action;

B.    Enjoining the Individual Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a fair transaction that does not irreparably harm the Company's shareholders;

C.    Awarding Plaintiff and the Class such damages as may be proved at trial including pre- and post-judgment interest,

D.    Awarding Plaintiff the cost and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

//

//

//

1   Dated:  September 16, 2010          **FINKELSTEIN THOMPSON LLP**

2

3                                       _Mark Punzalan_

4

5                                       Rosemary M. Rivas
                                        100 Bush Street, Suite 1450
6                                       San Francisco, California 94104
                                        Telephone: 415.398.8700
7                                       Facsimile: 415.398.8704

8

9                                       *Counsel for Plaintiff Mary Shanahan*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

### CV10- 6911 RGK (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Mary Shanahan | Cogent Inc.; Ming Hsieh; John C. Bolger; John P. Stenbit; and Kenneth R. Thornton |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Mark Punzalan (CA SBN: 247599)<br>FINKELSTEIN THOMPSON LLP<br>100 Bush St., Suite 1450, San Francisco, CA 94104, Tel.: 415-398-8700 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. 78n. Claim under which section 14(a) of Exchange Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV10 6911

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Wisconsin |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date 9/16/2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |